**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**EL DORADO DIVISION**

**PATSY HEIGELMAN as Heir and**
**Beneficiary of William M.**
**Heigelman**                                                                    **PLAINTIFF**

        v.        Civil No. 04-1079

**HARTFORD LIFE INSURANCE COMPANY**                                              **DEFENDANT**

## JUDGMENT

Now on this 22nd day of September, 2005, the captioned matter comes on for consideration, based on the Stipulated Administrative Record and the briefs of the parties.

1. Plaintiff's claim arises under the Employee Retirement Income Security Act, better known by its acronym ERISA. The appropriate standard of judicial review for the decision of an ERISA plan administrator is *de novo*, unless the plan documents grant the administrator discretion to make benefits decisions. **Firestone Tire & Rubber Co. v. Bruch**, **489 U.S. 101 (1989)**. In the case at bar, defendant is unable to locate any plan documents, and there is thus no basis upon which to perform a deferential review. The Court will, therefore, review the matter *de novo*.

2. The facts relevant to the issues presented are as follows:

\* Plaintiff's decedent, William Heigelman, was an employee of LTV Missiles and Electronics Group ("LTV") until he became disabled in 1989. As a result of his employment with LTV, Mr. Heigelman was a participant in a group life insurance policy

insured by the defendant Hartford Life Insurance Company ("Hartford"), with a benefit to be calculated at six times his annual salary.

* When he filed for disability benefits, Mr. Heigelman's salary was $2,874.00 per month.

* During the period of Mr. Heigelman's disability, Hartford waived the payment of premiums on his group life insurance coverage.

* On September 17, 1993, Mr. Heigelman's attending physician, Dr. Jay Lipke, completed an Attending Physician's Statement Of Continued Disability in which he certified that, although Mr. Heigelman remained totally disabled from his job at LTV, he was not totally disabled from "any other job." Dr. Lipke certified that Mr. Heigelman had been returned to "light work" as of February 10, 1993.

* Hartford notified Mr. Heigelman by letter dated October 5, 1993, that "[i]f at any time your disability ceases or you recover sufficiently to engage in any employment or occupation, your waiver of premium benefit will terminate and you should notify us at once."

* Mr. Heigelman died on July 29, 2003, without ever having returned to work at LTV. Plaintiff Patsy Heigelman, Mr. Heigelman's wife (and the beneficiary of the Hartford policy), notified LTV of his death on August 20, 2003, and provided them

with a copy of the October 5, 1993, letter regarding waiver of premiums. LTV passed the letter along to Hartford with the notation that "[o]ur records do not indicate that Mr. Heigelmann [sic] continued to be eligible for this benefit."

* Mrs. Heigelman filed a claim against her husband's life insurance policy on or about November 19, 2003.

* On or about February 15, 2004, someone at either LTV or Hartford verbally informed Mrs. Heigelman that the claim for life insurance coverage was being denied, based on non-payment of premiums.

* Mrs. Heigelman then retained an attorney, who wrote Hartford a letter dated March 24, 2004. The letter pointed out that Mr. Heigelman had been approved for waiver of premium benefits during his period of disability. The attorney asked that, "[i]f Hartford is denying benefits, we request that you place the denial in writing and forward a copy to me so that Ms. Heigelman can assess the appropriate actions to take." The attorney also requested a copy of the "the insurance policy that would be applicable" to the claim, as well as "all documentary information relative to the status of Mr. Heigelman as an insured under the policy."

* After receiving the letter from counsel, on April 9, 2004, the claims examiner sent the file to a claims specialist for further review. The claims specialist determined that after Mr.

Heigelman was released to return to work, his premium waiver should have been terminated and he should have been offered an opportunity to convert from his group life policy to an individual policy, but he was not notified to that effect. Hartford therefore determined that it was liable on the claim, and promptly sent a check for $221,418.63 to Mrs. Heigelman.

* Mrs. Heigelman's attorney then mailed a second demand letter to defendant, this time asserting a demand for $56,250.00 in attorney's fees.

* A third letter from Mrs. Heigelman's attorney to Hartford reiterated his request for a copy of the policy, and asked for a copy of "the calculation indicating the method for arriving at the benefit payment and interest calculation."

* In response, Hartford responded that it had based the payment on the salary reported on Mr. Heigelman's claim for disability benefits, which was $2,874.00 per month, and that it calculated the benefit from the date it received the claim for life insurance benefits until the date of payment at the rate of 18% per annum, "based upon the company[1] being sitused in the state of Texas."

* Throughout the period that this claim was under consideration, Hartford searched for, but was unable to locate, any plan documents.

---

[1]The reference appears to be to LTV, rather than Hartford.

3. Mrs. Heigelman claims that the foregoing facts indicate that Hartford was following an illegal practice of denying valid claims in the hopes that claimants would not pursue them; that interest was wrongfully withheld for the period between Mr. Heigelman's death and the date the claim was submitted; and that Hartford has violated ERISA by failing to produce plan documents upon request. She asks that the Court enjoin Hartford from denying valid claims in the hopes that claimants will not pursue them; enjoin Hartford to supply her with a copy of the "insurance policies" relevant to her claim; grant her judgment for interest from the date of Mr. Heigelman's death to the date of the claim; and require Hartford "to provide written policies to all of its policy holders with additional information advising policy holders that Defendant may not retain copies of the policies at the time that insureds or their beneficiaries may make claim."

4. Turning first to the contention that defendant engaged in an illegal claims practice, the Court finds that the evidence falls short of proving such conduct. When the claim was received by Hartford and reviewed by its claims examiner, the file reflected that Mr. Heigelman had been released to return to work in 1993, although LTV had no jobs he could perform because of his restrictions. The file also reflected the October 5, 1993, letter pertaining to the premium waiver, which notified Mr. Heigelman that "[i]f at any time your disability ceases or you recover

sufficiently to engage in any employment or occupation, your waiver of premium benefit will terminate and you should notify us at once." Finally, the file contained the letter from LTV that its files did not reflect that Mr. Heigelman had continued to be eligible for the premium waiver benefit. From all this, the claims examiner concluded that Mr. Heigelman had not paid premiums on the group life policy and his coverage had expired.

Upon receipt of the attorney's letter, the claim was submitted to a claims specialist, who found no evidence in the file that Hartford had contacted Mr. Heigelman when it learned that he had been released to return to work, so as to notify him that his premium waiver was no longer in effect and to offer him the opportunity to convert his group life insurance to an individual policy. The claims specialist concluded that the claim should be paid, and payment -- with interest -- was made promptly.

This scenario does not suggest a malignant intent to deny a valid claim. Hartford had an articulated basis for its initial rejection of the claim, and there is no evidence that it knew or believed that its articulate basis was incorrect. It responded correctly when the attorney's first letter prompted it to look further, by sending the file to a claims specialist, and immediately paid the claim upon the specialist's recommendation. The Court, therefore, concludes that Mrs. Heigelman's contention that Hartford engaged in an illegal claims administration practice

is not supportable.

5. The contention that interest was wrongfully withheld for the period between Mr. Heigelman's death and the date the claim was submitted is more problematical. It is undisputed that Hartford has been unable to produce any plan documents, and therefore there is no way to determine either the interest rate or the commencement date for payment of interest under the policy.

Neither party presents particularly cogent argument on this point. Mrs. Heigelman suggests that the Court should find the missing plan ambiguous and construe the ambiguities in her favor, to the effect that the plan provided interest from the date of death rather than the date of the claim. The problem with this argument is that the language is not shown to be ambiguous. There is simply no policy language to construe.

Hartford, for its part, merely argues that it "generously" paid interest at 18%, implying that Ms. Heigelman should be satisfied with that amount and not ask for more.

The Court finds instructive the analysis in **Sheehan v. Guardian Life Insurance Co.**, **372 F.3d 962 (8th Cir. 2004),** dealing with an ERISA policy that was silent on whether interest would be paid on benefits that were not paid when due. The Eighth Circuit there held that the issue should be analyzed under **29 U.S.C. §1132(a)(3)(B),** which provides that the beneficiary of an ERISA plan can bring suit for "appropriate equitable relief."

The parties agree that the insured event was the death of Mr. Heigelman, and when that even occurred, Hartford had an obligation to pay benefits under the life insurance coverage. Hartford further acknowledged its obligation to pay interest on the claim, by paying interest from the date the claim was made, and selected Texas law as the basis for determining the interest amount, for the logical reason that Texas was the situs of the company whose employees were insured under the policy. In the absence of plan documents, and given the concession of Hartford that it is appropriate to look to Texas law -- as well as the fact that Texas law yields results generous to Mrs. Heigelman on the issues now before it -- the Court finds it appropriate to look to Texas law for the resolution of this issue.

Under Texas law, "[w]hen a life insurance policy is at issue, the date from which the prejudgment interest is calculated begins thirty days after the date of the insured's death." **Protective Life Insurance Co. v. Russell, 119 S.W.3d 274 (Tex. App. - Tyler, 2003).** Using that rule, interest on Mrs. Heigelman's claim would have begun to accrue on August 29, 2003, thirty days after Mr. Heigelman's death on July 29, 2003. Hartford paid interest from the date it received the claim, November 19, 2003. Thus there is a period of 81 days during which interest should have been paid, but was not.

The interest rate selected by Hartford was 18% per annum, and

Mrs. Heigelman does not appear to claim that this is inadequate. The Court notes that this was the top rate specified by Texas law, which provides that "[a] money judgment of a court of this state on a contract that provides for interest or time price differential earns postjudgment interest at a rate equal to the lesser of: (1) the rate specified in the contract, which may be a variable rate; or (2) 18 percent a year." **V.T.C.A., Finance Code §304.002**.

The amount of the life insurance benefit was $206,928.00. Annual interest calculated at 18% on this amount would be $37,247.04. Daily interest at this rate would therefore be $102.05. Multiplying the daily amount by 81 gives a figure of $8,266.05. The Court concludes that Hartford owes Mrs. Heigelman this amount in additional interest.

6. Mrs. Heigelman also claims that Hartford should be required "to provide written policies to all of its policy holders with additional information advising policy holders that Defendant may not retain copies of the policies at the time that insureds or their beneficiaries may make claim," to atone for its inability to produce the plan documents applicable to Mr. Heigelman.

ERISA does not require that each participant in a plan receive a full copy of the policy. Typically, a plan summary is furnished, which is much shorter and written in layman's language. There is no evidence that Hartford failed to supply a plan summary

to Mr. Heigelman at the proper time.  Nor is there any evidence that Hartford deliberately misplaced – or failed to actively search for – the relevant documents upon request.  Although it is unfortunate that the plan documents could not be located, and the Court certainly cannot condone sloppy record-keeping practices, it concludes that there is evidence of, at worst, a technical violation of ERISA's disclosure requirements.  As Mrs. Heigelman herself points out, a technical violation does not create a cause of action.  There must be extraordinary circumstances, such as bad faith, active concealment, or detrimental reliance.  **Andersen v. Chrysler Corp.**, **99 F.3d 846 (7th Cir. 1996)**.

Nor would the injunction afford any relief to Mrs. Heigelman in this case.  She is not seeking to represent a class, and she has already obtained the benefits payable under the life insurance policy.  This form of relief will be denied.

7.  Finally, Mrs. Heigelman claims that the Court should award her "attorney's fees pursuant to the contract made with her attorneys," plus "additional attorney's fees expended in pursuant [sic] of this action."  The Court notes, however, that there is no presumption in favor of an award of fees to a successful ERISA plaintiff, and when considering the various factors enumerated in **Martin v. Arkansas Blue Cross and Blue Shield**, **299 F.3d 966 (8th Cir. 2002), cert. denied, 537 U.S. 1159 (2003)**, the Court is persuaded that a fee award is not merited in this case.

The Court considers the following factors to be particularly relevant:

* The conduct of Hartford was not, in the Court's opinion, highly culpable. The company had an articulable basis for its initial denial of the claim, and when Mrs. Heigelman's attorney gave it reason to review the claim, it did not drag its feet. It promptly reviewed the claim, altered its decision, and paid the claim. It paid, in addition, a handsome rate of interest, one which the Court suspects is substantially higher than would have been called for under the plan documents if they could have been found.

* The Court does not believe that a fee award would have a future deterrent effect in similar circumstances[2], and in fact believes the opposite. If an insurer knows that prompt review of a claim and revision of an erroneous decision will lessen its chances of paying an attorney's fee, it may well be motivated to act accordingly.

* The relative merits of the parties' positions are not far out of balance. Neither party was able to offer the Court much assistance in resolving the only issue on which Mrs. Heigelman prevailed, and indeed, the Court was left to craft an equitable remedy by analogy to Texas law. These facts demonstrate

---

[2] Given the difficulty in locating any case law relating to missing plan documents, the Court considers it unlikely that truly similar circumstances often present themselves.

that Mrs. Heigelman did not have a heavy weight of fact or legal precedent in her favor, although there was enough to tip the scales of justice in her favor.

For these reasons, the Court finds that an award of attorney's fees is not appropriate in this case.

8. Finally, the Court notes that Mrs. Heigelman raises various issues in her brief suggesting that she believes she is entitled to relief on other bases, such as the time it took Hartford to resolve her claim. These issues were not raised by the pleadings, and the brief does little more than suggest the possibility that Mrs. Heigelman might be entitled to relief on these theories. The Court will, therefore, give them no further consideration.

**IT IS THEREFORE ORDERED** that plaintiff Patsy Heigelman have and receive judgment in the sum of Eight Thousand Two Hundred Sixty-Six and 5/100 Dollars ($8,266.05) from defendant Hartford Life Insurance Company, plus interest thereon at the rate of 3.82% per annum from the date of this Judgment until paid, for all of which execution may issue.

**IT IS SO ORDERED.**

    **/s/ Jimm Larry Hendren**
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**